1
2
3
4
5
6                          UNITED STATES DISTRICT COURT
                           EASTERN DISTRICT OF WASHINGTON
7
   ROBERTO CANTU,
8
          Plaintiff,                        No. 1:16-CV-03167-RHW
9
          v.                                **ORDER GRANTING**
10                                          **DEFENDANT'S MOTION FOR**
   COMMISSIONER OF SOCIAL                   **SUMMARY JUDGMENT**
11 SECURITY,
12        Defendant.

13       Before the Court are the parties' cross-motions for summary judgment, ECF

14 Nos. 13 & 17. Mr. Cantu brings this action seeking judicial review, pursuant to 42

15 U.S.C. § 405(g), of the Commissioner's final decision, which denied his

16 application for Supplemental Security Income under Title XVI of the Social

17 Security Act, 42 U.S.C § 1381-1383F. After reviewing the administrative record

18 and briefs filed by the parties, the Court is now fully informed. For the reasons set

19 forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and

20 **DENIES** Mr. Cantu's Motion for Summary Judgment.

# I. Jurisdiction

Mr. Cantu filed his applications for Disability Insurance Benefits and Supplemental Security Income on November 13, 2012. AR 21, 201-09. His alleged onset date is October 1, 2012. AR 21, 201. Mr. Cantu's applications were initially denied on January 11, 2013, AR 65-75, and on reconsideration on March 28, 2013, AR 76-86.

A hearing with Administrative Law Judge ("ALJ") Laura Valente occurred on February 9, 2015. AR 41-64. On March 11, 2015, the ALJ issued a decision finding Mr. Cantu ineligible for disability benefits. AR 18-35. The Appeals Council denied Mr. Cantu's request for review on July 21, 2016, AR 1-4, making the ALJ's ruling the "final decision" of the Commissioner.

Mr. Cantu timely filed the present action challenging the denial of benefits, on September 20, 2016. ECF No. 4. Accordingly, Mr. Cantu's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

# II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be

under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of

impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the

national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational

interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Mr. Cantu was 21 years old at the alleged date of onset. AR 28, 201. He has at least a high school education. AR 28, 31, 283. Mr. Cantu is able to communicate in English. AR 28. Mr. Cantu has no past relevant work. AR 28. Mr. Cantu has a significant history of drug and alcohol use, including methamphetamine, marijuana, heroin, spice, street Xanax, mushrooms, and cocaine. AR 24-26, 239, 284.

## V.    The ALJ's Findings

The ALJ determined that, because substance use disorder is a contributing factor material to the determination of disability, Mr. Cantu was not under a disability within the meaning of the Act from the date the application was filed through the date of the ALJ's decision. AR 34.

**At step one**, the ALJ found that Mr. Cantu had not engaged in substantial gainful activity since November 13, 2012 (citing 20 C.F.R. §§ 416.920(b) & 416.971 et seq.). AR 23.

**At step two**, the ALJ found Mr. Cantu had the following severe impairments: drug addiction and alcoholism, schizophrenia, and depression (citing 20 C.F.R. § 416.920(c)). AR 23.

At **step three**, the ALJ found that Mr. Cantu did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 24.

**At step four**, the ALJ found Mr. Cantu had the residual functional capacity to perform a full range of work at all exertional levels with these non-exertional limitations: (1) he has sufficient concentration to understand, remember, and carry-out simple, repetitive tasks; (2) he can concentrate for 2 hours at a time for a total of 5 hours in an 8 hour workday with the usual and customary breaks; (3) he can work superficially and occasionally with the general public; (4) he can work in the

same room or vicinity with a small group of co-workers, but not in coordination with them; and (5) he is likely to have 3 absences per month. AR 25.

The ALJ determined that Mr. Cantu does not have any past relevant work. AR 28.

**At step five**, the ALJ found that, in light of his age, education, work experience, and residual functional capacity, in conjunction with the Medical-Vocational Guidelines, there are no jobs that exist in significant numbers in the national economy that he can perform. AR 28.

However, the ALJ found that Mr. Cantu's substance use disorder is a contributing factor material to the determination of the disability because he would not be disabled if he stopped the substance use. AR 34.

The ALJ found, that if Mr. Cantu stopped the substance use, he would have the residual capacity to perform a full range of work at all exertional levels with the following non-exertional limitations: (1) he has sufficient concentration to understand, remember, and carry-out simple, repetitive tasks; (2) he can concentrate for 2 hours at a time throughout an 8 hour workday with the usual and customary breaks; (3) he can work superficially and occasionally with the general public; and (4) he can work in the same room or vicinity with a small group of co-workers, but not in coordination with them. AR 30.

The ALJ then found that, if Mr. Cantu stopped the substance use, considering his age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that he could perform.

## VI.    Issues for Review

Mr. Cantu argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred by: (1) finding that substance abuse is a contributing factor material to the determination of disability; (2) improperly discrediting Mr. Cantu's subjective complaint testimony; and (3) improperly considering and weighing the medical opinion evidence.

## VII.   Discussion

### A. The ALJ Did Not Err in Finding that Substance Abuse is a Contributing Factor Material to the Determination of Disability.

If a claimant is found disabled and there is medical evidence of a substance use disorder, the ALJ must determine if the substance use disorder is a contributing factor material to the determination of disability. 42 U.S.C. § 1382c(a)(3)(J). Where the medical record indicates alcoholism or drug addition, the ALJ must evaluate "which of [the claimant's] current physical and mental limitations . . . would remain if [he] stopped using drugs or alcohol and then determine whether

any or all of [the] remaining limitations would be disabling." 20 C.F.R.§ 416.935(b)(2). If a claimant's remaining limitations would not be disabling, the alcoholism or drug use is "a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(b)(2)(i). An individual is not disabled pursuant to the Social Security Act where substance use is a contributing factor material to the determination of disability. 42 U.S.C. § 1382a(3)(J). Mr. Cantu bears the burden of proving his substance use is not a contributing factor material to the finding of disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

Mr. Cantu argues the ALJ erred in determining that his substance use is a contributing factor material to the finding of disability because he alleges his symptoms have persisted despite his self-reported sobriety.

However, the ALJ found that Mr. Cantu has repeatedly misreported his illegal substance use and his last use of the illegal substances, the absence of any successful drug and alcohol treatment, and that he likely continues to use illegal substances. AR 26. This finding is supported by substantial evidence in the record. Mr. Cantu has reported that his methamphetamine use was isolated, but his treatment records indicated that Mr. Cantu continued to abuse drugs and has misrepresented his usage. AR 26. Treatment records from July 2014, state that he told a treatment provider he had been clean from illegal substances for almost two years (AR 434), but the record demonstrates he had been using during that time

1   and alternatively reported around the same time that he had been clean only for the

2   last fifteen months or so (AR 329, 335, 337, 493). In August 2014, Mr. Cantu

3   stated he had been clean and sober for over a year from methamphetamine and

4   marijuana (AR 493), but testified that he had last used marijuana when he was 22,

5   an age he reached in April 2014, much less than half a year prior. AR 47. Mr.

6   Cantu testified that he used methamphetamine for close to four years and he

7   stopped about a year and half earlier. AR 47-48. However, he also stated he started

8   using methamphetamine at age 14, which means he would have used for at least

9   eight years. AR 26, 284. While Mr. Cantu reported his methamphetamine use as

10  isolated, he previously stated he used methamphetamine on a daily basis for at

11  least four years. AR 434. In June 2012, Mr. Cantu reported he had not used

12  methamphetamine and marijuana for two years (AR 270), but in November 2012

13  he reported that he had quit methamphetamines three to four years earlier and that

14  he continued to smoke marijuana (AR 298).

15        The ALJ's determination that Mr. Cantu's substance abuse is a material

16  contributing factor is also supported by the record. As noted by the ALJ, Mr. Cantu

17  testified that when he uses illegal substances he hears voices and they are worse

18  when he uses methamphetamine. AR 48-49. Mr. Cantu reported that he started

19  hearing voices around the same time he started using methamphetamine. AR 328.

20  The ALJ notes that when using drugs such as marijuana, Mr. Cantu experiences

difficulty maintaining focus and concentration. AR 298. The record reveals that Mr. Cantu's drug use aggravates, if not causes, his hallucinations. AR 359, 364. One treatment provider stated that his symptoms may be primarily a drug dependency issue and his symptom could be due to marijuana intoxication. AR 432. The record also states that the marijuana may be making the voices worse. AR 364. While Mr. Cantu's incarceration occurred prior to his alleged date of onset, it is his only certain period of sobriety (AR 329), and the ALJ noted there was no evidence of significant problems during this time, during which he obtain his GED in two months and pass all of his tests on his first try (AR 283, 330).

The ALJ concluded that Mr. Cantu would not be disabled if he stopped the substance use, thus the substance use disorder is a contributing factor material to the determination of disability. AR 34.

Importantly, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (internal quotation marks omitted). The ALJ did not err in finding that substance abuse is a contributing factor material to the determination of disability.

**B. The ALJ Properly Discounted Mr. Cantu's Credibility.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms

Mr. Cantu alleges; however, the ALJ determined that Mr. Cantu's statements regarding intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 31. The ALJ provided multiple clear and convincing reasons for discrediting Mr. Cantu's subjective complaint testimony. AR 31-32.

As detailed previously, the ALJ found that Mr. Cantu has repeatedly misreported his drug and alcohol use. AR 26. Untruthfulness about substance abuse is a clear and convincing reason to reject a claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Furthermore, the ALJ properly considered Mr. Cantu's inconsistent statements regarding drug use. *Smolen*, 80 F.3d at 1284 (an ALJ may consider inconsistent statements or other testimony that appears less than candid in weighing credibility).

The ALJ detailed several other inconsistencies contained in the record that further reduce Mr. Cantu's credibility. AR 31-32. Indicating a lack of conviction that he is indeed disabled, in April 2013, Mr. Cantu told treatment providers that "DSHS wanted me to come here and get medication and some counseling and my lawyer wanted me to get medicine for my Social Security case." AR 307. In May 2013, Shane Anderson, Pharm. D., commented that Mr. Cantu, "may have been overemphasizing his symptoms" because "each time I would look up at him after recording his answers, he would quickly look away and look around the room as if he was [sic] responding to external or internal stimuli. However, he never once

seemed disorganized or presented with long pauses or laughed/smiled inappropriately." AR 333.

Further, the ALJ discounted Mr. Cantu's credibility due to noncompliance with treatment. *Molina*, 674 F.3d at 1114; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's pain testimony."). Treatment records from September 2013 stated that although Mr. Cantu was referred to outpatient mental health treatment for dual disorders, "he never really attended." AR 337. In August 2014, Cantu reported being depressed, but he also mentioned to treatment providers that he had not been taking his prescribed psychotropic medication since November or December 2013, when he ran out of medications. AR 301. The ALJ found that the medical evidence did not support that a mental health impairment prevented Cantu from taking his medications. AR 32.

Mr. Cantu's credibility was further reduced by the ALJ due to his criminal history. AR 32. "An ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness." *Burch*, 400 F.3d at 680 (9th Cir. 2005); *See also Smolen*, 80 F.3d at 1284. The ALJ considered Mr. Cantu's felony conviction for burglary, a crime of dishonesty. AR 32, 331. Mr. Cantu reported that he served time in prison because he was in a gang and "we

wanted stuff so we could get weed" (AR 331) and "[b]because I was in a gang. It was fun ... we would go around shooting at people in a drive by" (AR 486).

The Court does not find the ALJ erred when discounting Mr. Cantu's credibility because the ALJ properly provided multiple clear and convincing reasons for doing so.

## C. The ALJ Properly Weighed the Medical Opinion Evidence.

### a. Legal Standard.

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

**b. Aaron Burdge, Ph.D.**

In October 2012, Dr. Burdge performed a psychosocial examination of Mr. Cantu and provided an opinion regarding his limitations. AR 283-95. Dr. Burdge diagnosed Mr. Cantu with schizoaffective disorder and opined that Mr. Cantu would have marked and severe limitations in several work-related psychological tasks. AR 285-86. Dr. Burdge's opinion is contradicted by the opinions of the providers at Central Washington Comprehensive Mental Health, the state agency opinions of Dr. Beaty and Dr. Forsyth, as well as the opinion of Dr. Kakar. AR 66-75, 77-86, 296-301, 307-312, 328-417, 431.

The ALJ assigned no weight to the consultative opinion provided by Dr. Burdge. AR 27. In making this determination, the ALJ provided multiple reasons supported by the record. The ALJ noted that Dr. Burdge's opinion contained significant discrepancies and omissions.

First, although Dr. Burdge opined that Mr. Cantu had a serious psychological diagnosis and recent substance abuse, he indicated that a representative payee is not recommended. AR 285-86. The ALJ stated that this constitutes a significant discrepancy or inconsistency because someone with multiple marked and severe limitations would be expected to need specialized assisted care. AR 27. A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Second, the ALJ stated that Dr. Burdge's opinion was rejected because he failed to discuss the impact of Mr. Cantu's drug and alcohol use on Mr. Cantu's residual functional capacity. AR 27-28. Although Dr. Burdge did opine in check-box form that that Mr. Cantu's impairments are not primarily the result of drug or alcohol use in the last 60 days, Dr. Burdge did not explain what effect the drug and alcohol use did have on the limitations. *See Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) (examining psychologist's "conclusions regarding [impairments] were unreliable because of Andrews's contemporaneous substance abuse"). Third, the ALJ noted that Dr. Burdge failed to reconcile his opinion that Mr. Cantu is disabled with his finding that the Personal Inventory Assessment he performed to assess Mr. Cantu's limitations is invalid. AR 28, 288-293. As previously stated, a discrepancy between

a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). In discounting Dr. Burdge's opinion, the ALJ supported the determination with specific and legitimate reasons supported by substantial evidence in the record. Thus, the Court finds the ALJ did not err in her consideration of Dr. Burdge's opinion.

### c. R.A. Cline, Psy.D.

In July 2014, Dr. Cline performed a psychological evaluation of Mr. Cantu and provided an opinion regarding Mr. Cantu's limitations. AR 433-37. Dr. Cline diagnosed Mr. Cantu with schizoaffective disorder, likely bipolar type, and methamphetamine use disorder, in sustained full remission, and opined that Mr. Cantu had moderate or marked limitations in every area of work-related psychological functioning. AR 435-36. Dr. Cline's opinion is contradicted by the opinions of the providers at Central Washington Comprehensive Mental Health,

the state agency opinions of Dr. Beaty and Dr. Forsyth, as well as the opinion of

Dr. Kakar. AR 66-75, 77-86, 296-301, 307-312, 328-417, 431. The ALJ did not

completely reject Dr. Cline's opinion, but assigned it minimal weight. AR 33.

In assigning minimal weight to Dr. Cline's opinion, the ALJ first noted that

the opinion was based, at least in part, on a Rey and TOMM assessment, and Dr.

Cline stated that Mr. Cantu's score of 7 on the Rey was not sufficient to rule out

malingering. AR 434. The ALJ noted that Dr. Cline had qualified his statement

regarding the Rey test by stating that he had administered the first and second trials

of the TOMM because of the possible invalidity of the Rey, and that the scores of

the TOMM are sufficient to pass the TOMM and rule out malingering at this time.

AR 33, 434. The ALJ credited Dr. Cline with making the added effort to

administer the first and second trials of the TOMM but this alone does not provide

reason to afford more weight to the opinion. AR 33. Next, the ALJ stated that Dr.

Cline's opinion was afforded only minimal weight because the only evidence of

record reviewed by Dr. Cline in preparing his opinion was the consultative report

of Dr. Burdge, which as discussed above, was properly assigned no weight due to

its inconsistencies and discrepancies. AR 33. Additionally, the ALJ assigned less

weight to the opinion of Dr. Cline because, apart from Dr. Burdge's report, Dr.

Cline relies significantly on Mr. Cantu's subjective report of his symptoms. AR 33,

433-37. This is significant because, in not reviewing any other evidence of record,

Dr. Cline based his opinion primarily on a single exam that was assigned no weight and the subjective report of the claimant whose credibility was properly discounted. An ALJ may reject an examining doctor's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible. *Tommasetti*, 533 F.3d at 1041; *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

The ALJ determined, that given the severity of Mr. Cantu's substance abuse, the opinions that Mr. Cantu's symptoms, such as command hallucinations, may be from his use of controlled substances and not necessarily from an underlying mental disorder, are more plausible, better explained and accordingly assigned greater weight. AR 33. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111. In discounting Dr. Cline's opinion, the ALJ supported the determination with specific and legitimate reasons supported by substantial evidence in the record. Thus, the Court finds the ALJ did not err in her consideration of Dr. Cline's opinion.

### d. Sonya Starr, ARNP

The opinion testimony of Sonya Starr, a nurse practitioner, falls under the category of "other sources." "Other sources" for opinions include nurse practitioners, physicians' assistants, therapists, counselors, welfare agency personnel, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1111.

The ALJ did not completely discount or reject the medical source statement provided by Nurse Starr in May 2013, but assigned it partial weight in assessing the severity of Mr. Cantu's impairments. AR 32, 313-14. Partial weight was assigned because Nurse Starr's statement that Mr. Cantu's symptoms have the potential to be well-controlled with regular comprehensive mental health services

that include counseling and medication, comports with the Department of

Corrections treatment records from when he was Mr. Cantu was clean and sober

while in custody. AR 32, 314. While the Department of Corrections treatment

records occurred prior to the alleged date of onset, it is the longest period of

sobriety and provides important information regarding Mr. Cantu's condition when

sober. The ALJ stated that additional weight is not assigned because, as Nurse

Starr also states, Mr. Cantu had not yet stated taking psychotropic medication, and

Nurse Starr's opinion that even attempting to work would be extremely difficult

for Mr. Cantu was highly speculative since he had not started treatment or

medication. AR 32, 313-14. Additionally, the ALJ noted that once Mr. Cantu had

started medication and treatment a few months later, in September 2013, he

showed "[m]arked improvement in his affect and general presentation." AR 319.

Nurse Starr also commented in June 2013, that Mr. Cantu seemed to be improving

now that he is engaged in regular care. AR 324. An ALJ may reject a doctor's

opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169

F.3d at 600.

      The ALJ properly provided germane reasons for assigning partial weight to

the medical source statement of Nurse Starr. Thus, the ALJ did not err in the

consideration of Nurse Starr's opinion.

# VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 17,** is **GRANTED.**

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 29th day of September, 2017.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge